STANDARD OIL CO. OF NEW JERSEY v. POWELL PAVING
& CONTRACTING CO. ET AL.

(138 S. E., 184)

1. MUNICIPAL CORPORATIONS—BOND FOR PERFORMANCE OF PAVING CON-
TRACT HELD TO INSURE PAYMENT FOR MATERIALS.—Bond, given for
faithful performance of city paving contract and conditioned for
the performance of all terms and conditions of contract, which
provided that contractor should do all work on said improvements
at his own cost and expense according to specifications, held to
insure payment for materials as well as for labor, notwithstanding
bond did not in terms cover claims of material, particularly in
view of definition of "surety" in specifications as corporate body
responsible for contractor's payment of all debts pertaining to
work.

2. CONTRACTS—THIRD PARTY CAN ENFORCE CONTRACT MADE BETWEEN
OTHERS FOR HIS BENEFIT, THOUGH NOT NAMED THEREIN.—A con-
tract between two persons for the benefit of third party, even
though he be not named therein, can be enforced by such third
party.

3. MUNICIPAL CORPORATIONS—BOND FOR PERFORMANCE OF PAVING
CONTRACT MUST BE CONSIDERED TOGETHER WITH CONTRACT AND
PROPOSAL MADE PART THEREOF.—Bond executed in accordance with
contract and conditioned for its faithful performance must be
considered together with such contract and proposal made a part
thereof, since they are interdependent and parts of one transac-
tion.

4. MUNICIPAL CORPORATIONS—CONTRACTOR'S LETTER TO CITY REQUEST-
ING ASSIGNMENT TO BANK ON ACCOUNT OF MONEY DUE HELD
SUFFICIENT ASSIGNMENT OF CONTRACTOR'S INTEREST IN FUND.—
Contractor's letter to city, to effect that he wished to assign a cer-
tain sum to bank on account of money due for current work of
paving done, held sufficient assignment of whatever interest in such
fund the contractor could dispose of under the provisions of con-
tract and its correlated documents.

5. MUNICIPAL CORPORATIONS—CONTRACTOR'S AGREEMENT, IN EVENT OF
DEFAULT, FOR SURETY'S SUBROGATION TO RIGHTS UNDER CONTRACT
HELD COMPLETE ASSIGNMENT OF SUM REMAINING UNPAID.—Con-
tractor's agreement with surety for performance of city paving con-
tract that, in the event of default, surety should be subrogated to

Note: As to right of subcontractor, materialman, or laborer to main-
tain action on contractor's bond, see annotation in 27 L. R. A. (N. S.),
573; L. R. A., 1915a, 768; 21 R. C. L., 985, 986; 4 R. C. L. Supp., 1440.

all rights and properties of indemnitor in such contract *held* a complete assignment to surety, in case of breach of contract, of all sums then remaining unpaid on contract.

6. MUNICIPAL CORPORATIONS—BANK TOOK CONTRACTOR'S ASSIGNMENT OF FUNDS SUBJECT TO INFERIORITY IN LIEN OF SUPPLY UNDER PRIOR ASSIGNMENT.—Where bank relied on assignment by contractor, who had previously agreed with surety that surety should be subrogated to all rights and properties of indemnitor in city paving contract, in case of breach, the bank takes such assignment with all its infirmities, including that of inferiority in lien to that of the bonding company in case of contractor's default.

7. SUBROGATION—THERE CAN BE NO SUBROGATION IN FAVOR OF VOLUNTEER.—There can be no subrogation in favor of a volunteer, since there must be a discharge of legal obligation for another, who is under primary obligation.

8. ASSIGNMENTS—ASSIGNEE OF CHOSE IN ACTION HAS NO HIGHER RIGHTS THAN THE ASSIGNOR HAD AT TIME OF ASSIGNMENT.—Assignee of chose in action can claim no higher rights than his assignor at the time of the assignment.

9. ASSIGNMENTS—FIRST ASSIGNEE HAS PRIORITY.—As between equitable assignees of interests in the same fund, the assignee first in point of time has rights therein superior to those who subsequently become assignees.

10. SUBROGATION—ASSIGNMENT TO BANK OF AMOUNT TO BECOME DUE ON MONTHLY ESTIMATE HELD SUBJECT TO LIEN OF SURETY UNDER AGREEMENT FOR SUBROGATION ON DEFAULT.—Where bank furnishing money to paving contractor for paying labor took assignment of amount to become due after next month's monthly estimate, and before monthly estimate contract was breached by nonpayment of material claims, claim of surety under agreement subrogating it to all rights and properties of indemnitor in contract, in case of default, attached as a first lien on funds, leaving claim of bank as junior equitable lien thereon.

11. MUNICIPAL CORPORATION—ASSIGNMENT TO SURETY OF RIGHTS UNDER CONTRACT IN CASE OF DEFAULT TAKES PRECEDENCE OVER ASSIGNMENT OF PERCENTAGE OF MONEY EARNED UNDER CONTRACTS.—Paving contractor's assignment to surety of all rights and properties in contract, in case of default, *held* to take precedence over claim of bank by virtue of contractor's assignment of "retentions," which were percentages of money earned under the contract, since the very name of the fund was notice that it might be burdened with claims based on breach of contract.

12. MUNICIPAL CORPORATIONS—CITY HELD NOT BOUND AS ACCEPTOR OF ASSIGNMENTS BY CONTRACTOR BY VIRTUE OF ACCEPTANCE BY OFFICIAL HAVING CUSTODY OF FUND.—Where contractor's assignment to others of money to become due under contract of city was accepted by city official with limited authority, the city was not bound as acceptor of assignments, so as to become liable thereon independently of fund due on contract, since assignees were charged with notice of limitations of official's authority, and so-called acceptance constituted nothing more than statements of custodian of fund that he would, when payment was due, make assignment to assignee instead of assignor.

13. REFERENCE—$250 COMPENSATION FOR MASTER TAKING TESTIMONY AND REPORTING IT WITH CONCLUSIONS OF LAW AND FACT HELD PROPER.—Allowance of $250 as compensation to master for services in taking testimony and reporting same with conclusions of law and fact in accordance with agreement by attorneys for all interested parties *held* proper.

14. ATTORNEY AND CLIENT—$2,000 ATTORNEY'S FEES FOR SECURING ALLOWANCE OF CLAIMS AGAINST SURETY AND FUND REMAINING IN HANDS OF CITY, AFTER BREACH OF PAVING CONTRACT, HELD PROPER.—Allowance of attorney's fees of $2,000.00, for services in securing allowance of claims against surety and against fund remaining in hands of city after breach of paving contract *held* proper.

15. ATTORNEY AND CLIENT—ATTORNEY'S FEE FOR SECURING ALLOWANCE OF LABOR AND MATERIAL CLAIMS SHOULD BE PAID BY PARTIES BENEFITED, AND NOT DEDUCTED FROM FUND IN HAND.—Attorney's fees for presenting and securing allowance of labor and material claims against surety and funds in hands of city after breach of paving contract should be paid by parties for whose benefit services were incurred, and not deducted from fund in hand, and then collected back from surety company so as to increase surety's liability.

16. MUNICIPAL CORPORATIONS—INTEREST ON CLAIMS FOR LABOR AND MATERIAL UNDER PAVING CONTRACT HELD RECOVERABLE AT 7 PER CENT., AFTER 30 DAYS FROM DATE DUE.—Where claims for labor and material on paving contract became due and payable at time of commencement of action by one of creditors, interest *held* recoverable thereon at the rate of 7 per cent. from and after 30 days after such date.

17. CONTRACTS—COURTS WILL GIVE EFFECT TO MEANING ATTRIBUTED TO CONTRACT BY PARTIES THERETO, IF MEANING IS CLEAR.—Parties to contract may, by agreement, attribute to words used in contract any meaning they may desire and if such meaning is clear the Courts will give it effect.

Before WILSON, J., Sumter, July, 1925.  Affirmed.

Action by the Standard Oil Company of New Jersey, in behalf of itself and other creditors, against the Powell Paving & Contracting Company, the American Surety Company, and others.  From the judgment, defendant Surety Company and others appeal.  Affirmed.

The report of the Master, E. C. Haynsworth, and the decree and order of Judge Wilson are as follows:

### REPORT OF MASTER

I, E. C. Haynsworth, Master for Sumter County, to whom the above-entitled cause was referred to take testimony and report my conclusions, both of law and of fact, thereon would respectfully report:

On the 6th day of February, 1923, Powell Paving Company entered into a contract with the City of Sumter, to do certain paving, according to specifications attached, which was based upon a proposal accepted and made a part of the contract; and contemporaneously therewith, gave bond to the city with the American Surety Company of New York, styling itself surety for the faithful performance of the contract.  The particular provisions of the proposal, contract, specifications, bond, and the application for contract bond made by the contracting company will be considered in order in discussing the issues which are presented for determination in this cause.

The contracting company proceeded to the performance of the work contracted for, and during the early part of 1924 completed it, receiving payment as the work progressed, as prescribed in the contract, there being in the hands of the city, on completion, a balance of $22,989.78.

In the meantime and before actual completion of the work, unpaid claims against the contracting company for materials furnished and used by them began to be filed with the city, and in addition thereto claims against the said fund were filed by the Bank of South Carolina for $3,500,

and by the Columbia National Bank for $10,000, based
upon certain assignments of said funds made by the con-
tracting company to them as security for loans of said
amounts, respectively, made to it by said banks, for the pro-
fessed object of paying current expenses of the company
in the prosecution of the work.

The payment of the amounts covered by the assignments
was refused by the city, on the ground that the claims then
filed and being filed with it against the contracting com-
pany were set up as having a lien on the fund in its hands,
and that it was only a stakeholder and could not properly
decide the conflicting rights of the claimants.

Suit was commenced on its claim by the Bank of South
Carolina against the city and the Powell Paving Company,
whereupon this action was instituted by the plaintiff in be-
half of itself and others, claimants against the city, con-
tracting company and the bonding company, the Bank of
South Carolina and certain other claimants, and the trustee
in bankruptcy of Powell Paving Company for the determina-
tion in one proceeding of all the conflicting claims and
issues between the parties.   A restraining order was made
in the cause against the institution of separate suits by
claimants, and all claims were required to be proved herein.

The complaint sets up:   (1) The terms of the contract
between the Powell Paving Company and the city, dated
February 6, 1923.   (2) The bond executed by the Ameri-
can Surety Company of New York, in compliance with the
contract.   (3) The completion of the work, according to
the contract, and balance remaining in the hands of the
city due thereon of approximately $20,652.48, which might
be increased by later adjustments.   (4) Failure of the
Powell Paving Company to pay plaintiff for materials
furnished for use on the contract.   (5) Agreement by the
paving company, subrogating the bonding company to all
its rights in the contract and funds payable in case of any
breach.   (6) That the obligation to furnish materials for

the work involved the obligation to pay for same, and is protected by the bond and therefore insured by the bonding company, and that plaintiff is subrogated to the rights of the bonding company, to the funds in the hands of the city. (7) That claims against the fund have been filed with the city to an amount in excess thereof, among which was (8) the claim of the National Bank of South Carolina, based upon the assignment of $3,500 of the funds in its hands by the paving company to said bank, as security for a loan in that amount. (9) Fear of the multiplicity of suits. (10) The bankruptcy of the Powell Paving Company and appointment of the trustee in bankruptcy, who stands in its place.

Plaintiff demands judgment against the Powell Paving Company and bonding company for the amount of the claim and distribution of the fund in its hands by the city, and that all suits under the contract against the city or against the fund be enjoined.

The answer of the city (1) admits most of the allegations of the complaint; (2) denies knowledge as to the validity of the claim of the plaintiff; (3) that construction under the contract has been completed and accepted and that the amount on hand, due under the contract, is $22,989.18, subsequently reduced by $152; (4) that the city is merely a stakeholder of said sum, and prays that proper distribution of the fund be made by order of the Court.

The answer of the bonding company sets up: (1) The contract. (2) The execution of its bond in connection therewith. (3) That the city has all funds applicable to the contract. (4) Sets up its agreement with the Powell Paving Company as represented by application for the bond, dated January 12, 1923, by which it is subrogated, in case of default on the part of the paving company in any provisions of the contract, to all rights and properties of the paving company in the contract, and that all payments, etc., shall be credited for any claim that may be made upon the bonding company by reason of its suretyship. (5)

Denies that the bond makes it liable for material, but demands that, if it should be so held liable, then the fund should be paid over to the bonding company to be by it applied to such claims.

The answer of the Bank of South Carolina (1) sets up a claim for $3,500 of the funds in the hands of the city, plus interest, by reason of an assignment to it by the Powell Paving Company of so much of the funds, which assignment was dated March 8, 1924; (2) denies that the claims for materials are covered by the bond or secured by it; (3) denies that the claims for materials are prior or preferred by reason of assignments by the Powell Paving Company to the bonding company; (4) sets up ownership of so much of the fund as covers its claim and that no party to the suit has any claim thereto; (5) sets up the assignment, alleged acceptance by the city, and that the amount borrowed by the Powell Company upon the security was used to pay for labor under the contract. Prayer for relief does not specifically demand judgment against the city as acceptor, but in a general way demands all of its rights growing out of the facts alleged. Under this general demand, the bank claims that the city is liable, as acceptor of the assignment to it, independently of the funds in its hands applicable to the contract.

Under the order of this Court notice to creditors was published and sundry creditors set up their claims by answers in the cause, but raised no new issues. Some proceeded to prove their claims in the usual way without formally answering; the only one raising issues of general import in the cause is the Columbia National Bank, which sets up a loan of $10,000 by it to Powell Paving Company, secured, in addition to certain indorsements, by assignment by the paving company to it of $10,000 of funds reserved by the city under the contract, until completion. This claimant furnished testimony as to the facts on which it based its claim, and while not filing a formal answer, takes the

same stand as the National Bank of South Carolina, and as far as the facts of the two transactions are similar, adopts the positions and arguments taken in behalf of the latter.

Other claims will be considered in order at the foot of this report.

The prayer for relief in the complaint does not, in terms, demand judgment against the bonding company, but such other and further relief as may be just and equitable.

It was the general understanding among attorneys for various parties and claimants that all questions arising in the case should be determined.

The Columbia Bank's claim is considered herein, as if it had been set up in a formal answer.

There is practically no dispute as to the facts in this case. The main questions of law are as follows:

(1) Does the bond insure the payment of claims for materials?

(2) What are the relative positions of the assignments of funds due by the city to Powell Paving Company, claimed by the two banks, and that claimed by the bonding company?

(3) Is the city bound as acceptor of the assignment to the banks, so as to become liable to them thereon independently of the fund in its hands?

(4) Do the terms "labor" and "materials," as used in the contract, bond, specifications, and application, cover only labor on and materials actually entering into the construction of the road-paving, or do they apply to labor and materials used, that were incidental and ancillary, but essential to the prosecution of the work, such as coal, gasoline, repairs to machinery, etc.?

(5) That classification of the several claims for materials and labor.

I. Does the bond insure payment for materials as well as for labor?

It is a settled principle of law that a contract be-

tween two persons for the benefit of a third, even though he be not named therein, can be enforced by such third party. *Mack case,* 103 S. C., 55; 87 S. E., 439.  Also, *Duncan v. Moon,* Dud. Law, 332, and *Dehay v. Porcher,* 1 Rich. Eq., 268.

Many cases have been cited applying this principle to contractors' bonds for the benefit of materialmen, where the words used showed the intention to contract for their benefit.  The intention of the parties in this respect must be derived not only from the condition of the bond, but from the contract, specifications, proposal, etc., which are interrelated and must be construed together.

The proposal, made a part of the contract, offers "to furnish all necessary machinery, equipment, tools, labor, and other means of construction and to furnish all material specified in the manner and at the time prescribed."

The contract recites "that in consideration of the payment of the sums named in said proposal, the contractor agrees at his own proper cost and expense to do all the work of said improvement according to the requirements of the specifications, special provisions, proposal, and plans, which are made a part hereof, and subject to all terms and conditions of said specifications, to furnish all labor, tools, machinery and materials necessary therefor, except as pro vided in said specifications."  It further provides that, "in order to insure the faithful performance of each and every condition, stipulation, and requirement made by this contract, and to indemnify and save harmless the party of the first part from any and all damages, either directly or indirectly arising out of, and failure to perform same, the party of the second part is to execute and deliver herewith a bond in the penalty of $50,000, conditioned for the faithful performance of such conditions, stipulations and requirements, with surety or sureties satisfactory to the party of the first part."

The condition of the bond executed in accordance with the contract and contemporaneous therewith is "that if said bound principal, Powell Paving & Contracting Company, shall in all things well and truly perform all of the terms and conditions of the foregoing contract, to be by them performed and within the time therein mentioned, and shall pay all claims for labor performed in and about the construction of said work, and shall have paid and discharged all liabilities for injuries, etc., then this obligation to be void, otherwise to be and remain in full force and virtue."

All these documents must be considered together. They are interdependent and parts of one transaction. *Mack Manufacturing Co. v. Bonding Co.,* 103 S. C., 67; 87 S. E., 439.

It is claimed in behalf of the bonding company that the bond does not, in terms, cover the claims of the materialmen, specifying only claims for labor performed, and liabilities for injuries, etc.

But the bond is conditioned for the performance "of all the terms and conditions" of the contract. The proposal is "to furnish all necessary machinery, tools, equipment, labor, and all materials specified." The contract, of which the proposal is a part, binds the contracting company "at its own cost and expense, to do all the work of said improvements * * * according to the specifications * * * proposal * * * which are made a part hereof."

It is true that the condition does add a specification that all labor and damage claims shall be paid, but is it reasonable to construe the inclusion of labor, which is protected under the general provision above set out, with claims for injuries, which are not so protected, in a special provision, as nullifying the general provisions? I cannot see the logic of such a proposition. The bond is conditioned for the performance of the entire contract, which includes furnishing labor, materials, equipment, etc., at its own expense by the contracting company, and an additional guaranty as to pay-

ment of labor adds nothing to the blanket protection pro-
vided by the general condition, and may be regarded as
surplusage.

It is argued that the city could not be made liable for
materials used on the contract, and has no interest in the
protection of the materialmen. But the same can be argued
against the claims for labor; yet the specific protection of
labor by the bond implies sufficient interest on the part of
the city in the payment of it to furnish consideration for
that part of the bond. The *Mack case,* which is in principle
on all fours with this case, holds that the city has an in-
terest in the payment of labor and materials on its improve-
ments, and that the bond taken by it for the protection of
those furnishing labor and materials, as well as for its
own protection, should be enforced for their benefit.

In fact, there is even greater need of protection for
materialmen than for laborers. Labor is paid at short in-
tervals, and, in case of tardy payments can discontinue work
and avoid any large loss. Materials, on the contrary, are,
on extensive projects, furnished in large quantities. Single
shipments may run into thousands of dollars in value, and
the chance of heavy loss is ever present. The existence of
protection in the shape of a bond or other security must
inure to the benefit of the city, in the prevention of delays
due to doubts as to solvency of the contractor.

The concern of the city in freedom of its public improve-
ments from the cloud of unpaid claims is greater in reference
to material claims than to labor, because the former are likely
to be much larger.

A number of cases from other states have been cited in
support of this proposition, which were considered by the
Supreme Court in the *Mack case,* but, after all, that case, if
it applies here, and I conclude that it does, is decisive of this
case, on the question of the right of materialmen to the pro-
tection of the bond.

The following excerpts from the opinion in that case, written by the late Justice Gage, are peculiarly applicable here.

"The contractors, Bowe & Page, therefore (1) were expressly bound to furnish the material at their own expense; and (2) were impliedly bound to pay to those who supplied them with material, the price of it. * * *

"Indeed, the appellant suggests that 'there was no occasion, reason, or inducement for the city to insist upon a provision for the payment of the claims of materialmen; its contract was with Bowe & Page, and it was a matter of legal indifference to the city where, from whom, and how Bowe & Page secured the material for their work, or whether, having secured it, they paid for it or not; the materialmen could not impose a lien upon the surety of the city.'

"It cannot be that a municipality about to engage in a great public work, with full knowledge that those who furnished labor and material therefore could not claim a lien for them on the streets, and so solicitous that the work should be faithfully done that a bond was exacted, was 'indifferent' as to whether laborers or materialmen were paid.

"And if they were indifferent, that state of mind arose only out of satisfaction in contemplation of the fact that they had provided a way of escape for laborers and materialmen, to wit, the bond of an insurance company. But that was not indifference.

"Nor is there any force in appellant's suggestion that the entire agreement raised no promise by Bowe & Page to pay for labor and material. As before stated, they bound themselves by the contract to supply all labor and material at their own cost; and there followed, of course, the legal obligation to pay for these necessities.

"The agreement by the bond company that Bowe & Page 'shall deliver same to the city of Greenville, free from all claims aforesaid,' does not at all modify or conflict with the

words next before those which bind the insurance company to see that materialmen are promptly paid.

"If 'same' refers to streets, the quoted words are in harmony with those preceding it; so that if the streets have been delivered to the city with claims (not liens) for unpaid material outstanding, then the bond has been violated. The city was rightly mindful that all such claims should be paid, and it provided by the bond that they should be paid. * * *

"Finally, the brunt of the demurrer is that the intent of the parties was to save the city harmless. That is part of the truth, but not all. The intent of the parties is inferable from the words they have used, and from them it was to save the city, and to save others as well. * * *

"The bond was agreed to be given (in the proposal) for 'the faithful fulfillment of the contract.' A faithful fulfillment of the contract required that the contractors, Bowe & Page, should furnish at their own expense the material and by necessary implication, that they should honestly do so by paying for it." * * *

The argument in favor of the liability of the bonding company for materials as well as labor is reinforced by the definition of the word "surety" (meaning the bonding company) contained in the specifications, which are a part of the contract. That definition is as follows:

"Surety: The corporate body which is bound with and for the contractor, who is primarily liable, and which engages to be responsible for his payment of all debts pertaining to and for his acceptable performance of the work for which he has contracted."

The definition should be read into the bond and makes it clear that it was the intention of all the interested parties that the bond should insure the carrying out of the contract in every particular.

I conclude, therefore, as matter of law, that the bond in the case secured the payment of claims for materials, and the bonding company is liable therefor.

As to the character of the several claims filed herein, and whether or not they are covered by the bond, my findings will be hereinafter stated.

II. What are the relative positions of the assignments of funds due by the city of Powell Paving Company, claimed by the two bonds (banks) and that claimed by the bonding company?

First, as to the claim of the Bank of South Carolina: This bank, on March 8, 1924, discounted a note for Powell Paving Company in the sum of $3,500, payable April 1, 1924, and personally, as collateral thereto, addressed a letter to the city of Sumter, of even date therewith, the body of which is as follows:

"We wish to assign to the National Bank of South Carolina of Sumter, on account of money due us for current work of paving done in the City of Sumter, the sum of $3,500, this amount being now due us and to be paid for out of the next monthly settlement, which we believe will be about April 1st, next."

At the foot of this letter, "J. W. Brunson, Clerk and Treasurer," wrote as follows:

"We acknowledge receipt of the above assignment and will make payment of $3,500 direct to you."

On this letter and the acknowledgment above quoted is based the bank's claim.

It was objected at the hearing that the letter is not, in fact, an assignment of the fund mentioned, but merely expressed a wish or purpose to make such assignment. It is, in fact, not an assignment in form, and for that purpose is inartificially drawn, but it is clear that it was intended as such by the paving company, and received as such by the bank, and the former would not be heard to deny it such effect, so that it must be treated as being a sufficient assignment of whatever interest in that fund the paving company could dispose of under the provisions of the contract and its correlated documents.

But the paving company had in its application to the bonding company for bond already agreed with it that, "in the event of any breach or default on his part in any of the provisions of the contract covered by said suretyship, the said surety, as surety, shall be subrogated to all the rights and properties of the indemnitor in such contract, and that deferred payments and any and all moneys and securities that may be due and payable at the time of such default, or on account of extra work or materials supplied in connection therewith, or that may thereafter become due and payable on account of said contract, shall be credited for any claim that may be made upon the said surety by reason of its suretyship as aforesaid."

This was and is a complete assignment to the bonding company, in case of a breach of the contract, of all sums then remaining unpaid on the contract for the purpose of reimbursing the bonding company for any liabilities it might incur by reason of its breach.

It was not an assignment outright, which would have been, at once, to substitute the bonding company for the paving company, as the contractors, but it was to secure the latter against dissipation of the fund by the former, and thus increasing the liability of the latter.

It was the right of the bonding company that all funds under the assignment until a breach of the contract, but its claim upon such funds as security existed from the date of the execution of the contract and the bond, and must take precedence over any assignments of a later date.

If the bonding company had taken as its security a mortgage of chattels, it would have had no right to take possession until a breach, but its rights of priority as a lienee would be determined (outside of questions of recording and notice) by the date of the instrument and not by the date of the breach, and it seems to me the same principles apply to the assignments in question.

It was the right of the bonding company that all funds arising out of the contract should be first applied to the claims arising thereunder, so as to lessen claims against itself as insurer.

It had an assignment prior to that of the bank, and as the latter relies on its assignment as such, it must take it with all its infirmities, including that of inferiority in lien to that of the bonding company, and I so conclude as matter of law.

It is with reluctance that I reach this conclusion, for the reason that the money derived from the loan was used in furtherance of the contract and in lessening the ultimate liability of the bonding company.

If there were any warrant in law for subrogating the bank to the rights of the laborers and materialmen that its funds were used to pay, there would be a different conclusion, but the law is elementary, that there can be no subrogation in favor of a volunteer.

"It always requires something more than payment of a debt in order to entitle the person paying the same to be substituted in the place of the original creditor. There must be the discharge of a legal obligation for another, who is under a primary obligation, for no man can make another his debtor without his consent, and only a creditor or person under obligation can invoke the doctrine—there being no debts, there can be no ground for subrogation. 37 Cyc., 375.

Furthermore, the bank did not pay debts of the paving company and thus establish even a shadow of claim to subrogation, but it made a loan that the borrower stated was for the pay roll (and afterwards testified was so used). It had no guaranty that the loan would be so used and no way of enforcing and no interest in requiring such use of it.

But the bank claims that its assignment was made and accepted by the city before breach of contract, and that it therefore had legal title to the fund before the right of the

bonding company matured.   In other words, that this assignment was of a fund in the hands of the city, then payable, under the contract, to the paving company, and that the alleged acceptance by this city was a dedication of so much of the fund, which, in theory, placed the title to it in the bank.   But such is not the case.   The assignment purports to cover the amounts to be due under the next monthly estimate, which was some time after the breach.

It is true one of the engineers, evidently as a favor to Powell Paving Company, made a preliminary estimate, showing that enough of the work had been completed to show that the sum necessary to cover the loan would be due to Powell Paving Company.   But under the contract no payment could be required, except upon regular monthly estimates.

In the *Mack case,* as reported in 114 S. C., 207; 103 S. E., 499, the bank, under similar circumstances, had reduced its claim to judgment and long since received the money, when the bonding company undertook to assert its priority. The Court sustained the bank on the ground that it had changed its equitable claim to legal possession and should not be disturbed—the necessary inference being that if both claims had remained as equities, they would have been judged by their priorities as such.

At this point in the preparation of this report, I asked the attorneys interested in this branch of the case for further argument on the question as to whether or not notice of the assignment to the bonding company was necessary to affect the rights of the holders of subsequent assignments.   The point was reargued, and from the authorities cited on the question I conclude that the assignee of a chose in action can claim no higher rights than his assignor had at the time of the assignment, and that as between equitable assignees of interests in the same fund the assignee first in point of time has rights therein superior to those who subsequently become assignees.

"The assignee of a chose in action is not within the rule which protects a purchaser for valuable consideration without notice. The assignee takes only such interest as the assignor has, and is bound by all the equities binding the latter."

*Maybin v. Kirby,* 4 Rich. Eq., 105.

This doctrine is supported by the cases of *Moffatt v. Hardin,* 22 S. C., 29. *Patterson v. Rabb,* 38 S. C., 147, 151; 17 S. E., 463; 19 L. R. A., 831, and *Westberry v. Simmons,* 57 S. C., 481; 35 S. E., 764.

The hardship of this application of the law to the claim of the Bank of South Carolina is so apparent that I have given earnest consideration to every principle of law and equity suggested in its behalf by its attorneys. I have considered the proposition that its assignment might be held to be a transfer of title to a definite fund in the hands of the city, and as such passing legal title, placing the claim on somewhat the same basis at that of the bank in the second *"Mack"* case. But, as said above, while the *ad interim* estimate by Mr. Palmer, one of the engineers, showed that the amount of the assignment had been earned at that time, still it was not then due and payable; being payable only after the next regular monthly estimate. If no complications had arisen (such as did arise), neither Powell Paving Company nor the bank could have required payment until after the next monthly estimate. Before that time the contract had been breached by the nonpayment of claims of materialmen; the claim of the bonding company had attached and assumed its position as a first lien on all funds arising from the contract, leaving the claims of the banks as junior equitable liens.

To recapitulate, there are three grounds on which this claim is based: (1) Subrogation of the bank to rights of labor and materialmen to whom the money advanced was paid. (2) Lack of notice of prior assignment. (3) Legal

(not merely equitable) assignment of fund, taking precedence over mere equitable liens.

Notwithstanding the hardship to the bank, I am forced, under my view of the law, as above stated, to conclusions adverse to this claim on all these points.

Second, as to the claim of the Columbia Bank: The conclusions reached above in reference to the claims of the Bank of South Carolina apply to this claim with even greater force, for the reason that its assignment was of "retentions," and "retentions" was a percentage of the money earned under the contract, but withheld as security for its complete performance. The very name of the fund (a portion of which was assigned) was notice that it might be burdened with claims based on a breach of the contract.

Furthermore, three-fourths of this amount was renewal of an old loan, and I do not recall any evidence that the other fourth was used to pay claims on this contract.

I conclude, as matter of law, that the assignment to the bonding company takes precedence also of this claim.

Third, as to the assignment to the Palmetto Quarries. Company:

This is an assignment for $1,449.91 by Powell Paving Company to said company of so much from the final estimate on this contract. To this assignment the same findings apply as to the others considered above, but this amount is part of these claims embraced in the list of those approved, set out below.

III. Is the city bound as acceptor of the assignments of the two banks, or either of them, so as to become liable to them thereon, independently of the fund?

I conclude that it is not, for the following reasons:

The banks were dealing with an official of the city, whose authority was limited, and they were charged with notice of such limitations. He had absolutely no right to bind the city in any way unless authorized by general ordinance or

specific directions of council. His duties were ministerial; he was to pay money on this contract only in accordance with instructions. He had made previous payments to the banks on assignments, but only when funds were due Powell Paving Company, and would have been properly paid to it, but for the assignments.

I conclude that the so-called acceptances by "J. W. Brunson, Clerk" were nothing more than statements by him that as custodian of the fund he would, when payment was due Powell Paving Company, make same to assignees instead of assignors. He could do no more.

If money earned by the contractors became barnacled with unpaid claims before it was actually payable, then neither the contractor nor his assignee could enforce payment.

Even if the so-called acceptances could be so interpreted as to have bound an individual acting for himself (and I do not think they would bear such interpretation), they could not have the effect of making the city independently liable.

There is no testimony tending to show such authority conferred on the clerk, nor any knowledge on the part of council of the existence of any act of the clerk tending to form the foundation for such claim. And we have the most emphatic testimony of the then mayor of the city that the clerk had no such right; that the council had no knowledge of any act of his beyond his authority, until the question under consideration arose, when he was definitely warned not to act thus in future.

Many claims have been filed under the order calling in creditors, some of which have not been questioned as to legality or amount. Some are questioned only as to amount due, and some are questioned both as to legality and amount. Below will be found a list of these claims with the amounts that I find should be approved, in this proceeding. I conclude, as matter of law, that they are valid claims against the

fund in the hands of the city and should share ratably
therein, and that, should there be insufficient funds to pay
them in full, the bonding company should be required to
pay any deficit.

The bond secures specifically the payment for all labor
"performed in and about" the construction of said work,
and in general the performance of the contract, which pro-
vides for furnishing all tools, machinery, and materials
necessary therefor.

Those claims, the legality of which have been questioned,
are for labor and materials "incident to," but necessary for,
the work of paving.  Materials used in the work, though
not part of the permanent paving, are as necessary as the
actual cement, asphalt, etc., that constitute the road; and
so with labor employed in making repairs to machinery, etc.

There is a great array of authorities cited by counsel for
claimants, sustaining this position, which need not be cited
here.

The claims approved and their amounts are as follows:

| | |
|---|---:|
| Slattery & Henry, Inc. | $   150.00 |
| American Limestone Company | 2,579.26 |
| W. B. Boyle Company | 504.00 |
| W. B. Boyle Company | 142.77 |
| Southern Crushed Stone & Granite Company | 931.85 |
| E. C. Haynsworth | 100.00 |
| Morris College | 67.50 |
| Palmetto Quarries Company | 1,699.98 |
| Lawrence Stone & Gravel Company | 4,086.14 |
| Clinchfield Portland Cement Company, T. C. Cross, trustee | 5,832.97 |
| J. P. Commander | 98.20 |
| Standard Oil Company | 2,682.39 |
| Sumter Machinery Company | 430.28 |
| Durant Hardware Company | 230.09 |
| John Evans Welding Company | 206.80 |
| Ralph Hill | 86.75 |

| | |
|---|---|
| Gulf Refining Company | 2,310.91 |
| W. B. Burns & Son | 112.55 |
| Sumter Railway & Mill Supply Company | 123.11 |
| Whilden & Clement | 92.35 |
| J. E. Stoudemire | 100.90 |
| Joe Richardson | 236.32 |
| City Vulcanizing Works | 90.80 |
| B. W. Richardson | 937.75 |
| Knight Bros | 63.30 |

The following claims are disapproved for the reason that there is no proof that they are incident to the contract in this case, to wit:

| | |
|---|---|
| Mitchell's Drug Store | $ 24.25 |
| Sumter Ice & Fuel Company | 295.37 |
| Anchor Motor Company | 22.88 |
| C. H. Andrews | 26.95 |

The claim of K. T. Felder for $341.06 was repudiated by Powell Paving Company on the ground that material charged for was not up to specifications. Claimant made no effort to establish the claim, and I therefore disallow it.

The attorneys for plaintiff ask for a fee out of the fund, on the ground that their work herein has been for the benefit of all claimants against the fund and against the bonding company, and suggest the sum of $2,000. There was no issue made on this question and no testimony offered, but the opinion of some of the attorneys in the cause was that that sum would be a reasonable fee. I find that said attorney should be compensated from the fund—and I think the sum mentioned not unreasonable.

All of which is respectfully reported.

### DECREE OF CIRCUIT JUDGE

This matter comes before me on the report of E. C. Haynsworth, Esq., Master for Sumter County, together with the exceptions thereto. The case was argued before me at my chambers, in Manning, S. C., where I was attended.

by counsel representing all parties. After very carefully considering both the oral argument and the briefs submitted by the various attorneys, I have reached the conclusion that the master correctly answers the questions in this case; that his report should be confirmed and made the judgment of this Court for the reasons therein stated, except in so far is made part and parcel of this decree.

It is therefore ordered, adjudged, and decreed that said report of said master be, and hereby is, in all respects confirmed and made the judgment of this Court, except in so far as the same may be modified hereby. And said report is made part and parcel of this decree.

At the hearing before me counsel for the plaintiff brought up the matter of compensation for the master herein. It was suggested by the Court that, in the absence of an agreement on the part of the attorneys interested in the disposition of the fund in the hands of the Court, the statutory allowance would have to control, whereupon it was agreed by the attorneys for all of the parties except the Columbia National Bank and R. K. Wise, as trustee in bankruptcy, that the said master should receive the sum of $250 as proper compensation for his services in taking testimony and reporting the same with his conclusions of law and fact. The conclusion of the Court herein excludes the Columbia National Bank and the trustee in bankruptcy from participating in the fund, and the Court therefore thinks it would be proper to carry into effect the agreement of the other counsel, since neither of the dissentient parties is interested.

The master allows the attorneys for the plaintiff a fee of $2,000. I think this fee is reasonable and should be paid. In fact, no objection was made to its allowance before me, although the question is raised by exceptions. Under the decision of the Supreme Court in the case of *Buist v. Williams,* 81 S. C., 495; 62 S. E., 859, this fee is an entirely proper allowance, but should be paid

by the parties for whose benefit the services were incurred, that is to say, the parties for whom these attorneys acted, to wit, the materialmen and labor claimants in this cause, and should not be deducted from the fund in hand and then collected back from the surety company so as to increase the surety's liability.

The Master does not discuss the question of interest. The complaint and the answer of the various materialmen, who were made parties defendants, ask for interest, and the state statute provides that claims against corporations should draw interest after 30 days. The master does not find expressly when each of the claims here in question became due and payable, but the Court finds from the filing of the claims and the record in the cause that they were due and payable at the time of the commencement of this action, to wit, April 29, 1924. The Court thinks it therefore proper to allow the claimants interest at the rate of 7 per cent. per annum on their respective claims from and after May 29, 1924, until said amounts are paid in full.

Since the conclusion of the reference the City of Sumter has applied for and obtained an order permitting it to pay into Court the amount found by the master to be due by it on the contract of street paving with the Powell Paving & Contracting Company, to wit, the sum of $22,836.81, together with such accretions of interest as the said City of Sumter may have received from said fund during the pendency of this action. This fund is now in the hands of the master subject to distribution under the order of this Court.

It is ordered, adjudged, and decreed that the said master disburse the said fund now in his hands in the following manner, that is to say, first, to the costs and disbursements of this action, including an allowance to the Master of $250 for taking testimony and reporting thereon, and including his usual commission upon the receipt and payment of money, further including the sum of $2,000 to be paid the attorneys for the plaintiff as hereinbefore stated. Second, that the

remainder of said fund the said Master to disburse to the claimants whose claims are approved and allowed in the master's report, except the claim of B. W. Richardson, which has been reduced to $500 by agreement, in proportion to the respective amounts of each of claim, and that interest at the rate of 7 per cent. per annum be allowed on each claim from and after the 29th day of May, 1924: Provided, however, that the said master do withhold in his hands, subject to the further order of this Court, the aliquot portion of the said fund assignable to the claim of the Clinchfield Portland Cement Corporation and T. C. Cross, as trustee.

It is further ordered, adjudged, and decreed that the said Master do with all convenient speed ascertain what sum, in addition to the fund on hand, is necessary to pay said claims in full, including interest thereon, and do immediately notify the defendant American Surety Company of said amount; that the defendant American Surety Company do forthwith, after such notice, pay unto the Master a sufficient sum to pay all of said claims, with interest as herein allowed, in full, crediting on said claims, however, the said sum of $2,000 paid plaintiff's attorneys, so that the liability of the said American Surety Company shall not be increased by said payment, but said payment shall come out of and be deducted from the amount due said claimants.

It is further ordered, adjudged, and decreed that the said master do promptly make and file with this Court a report of his acts and doings hereunder, which report shall show the amount of each claim, the amount paid to each claimant, such claimant's proportionate share of the attorney's fee, and the amount due each claimant by the said American Surety Company, and, if such amount has not been paid upon the coming in of said report, that each claimant have and is hereby granted leave, without further order of the Court, to enter judgment against the said American Surety Company for the amount due by it to such claimant.

It appears from the proceedings in this cause that the Clinchfield Portland Cement Corporation and T. C. Cross, as trustee for Powell Fuel Company, bankrupt, each lay claim to the same portion of the said fund now in the hands of the master. The claim of the Clinchfield Portland Cement Corporation is listed by the master at $5,832.97. The answer of the said T. C. Cross, as trustee, sets up a claim for $5,016.10, and it is admitted by parties that both claims arise out of the delivery to the Powell Paving & Contracting Company of the same cement, and it is a question between these two claimants as to which one is entitled to receive the money. There is also a question, if the said T. C. Cross prevails to the extent of his claim, whether or not the Clinchfield Portland Cement Corporation is entitled to the difference.

It is therefore, ordered, adjudged, and decreed that the said master do continue to hold, subject to the proper order of this Court, out of the funds now in his hand and such funds as may hereafter be placed there by the American Surety Company, the amount of $5,832.97, with interest thereon from May 29, 1924, being the aliquot portion of said funds assignable to said claimants, and that this cause be again referred to the said E. C. Haynsworth, as such master, to take such testimony as may be offered by the said Clinchfield Portland Cement Corporation and the said T. C. Cross, trustee, and to report the same, together with his conclusions of law and fact as to who is entitled to the said fund.

The following is a list of the claims above referred to, approved and allowed by the said master:

| | |
|---|---:|
| Slattery & Henry, Inc.....................$ | 150.00 |
| American Limestone Company.............. | 2,579.26 |
| W. B. Boyle Company................... | 504.00 |
| W. B. Boyle Company................... | 142.77 |
| Southern Crushed Stone & Granite Company.. | 931.85 |
| E. C. Haynsworth ...................... | 100.00 |

| | |
|---|---:|
| Morris College | 67.50 |
| Palmetto Quarries Company | 1,699.98 |
| Lawrence Stone & Gravel Company | 4,086.14 |
| Clinchfield Portland Cement Company, T. C. Cross trustee | 5,832.97 |
| J. P. Commander | 98.20 |
| Standard Oil Company | 2,682.39 |
| Sumter Machinery Company | 430.28 |
| Durant Hardware Company | 230.09 |
| John Evans Welding Company | 206.80 |
| Ralph Hill | 86.75 |
| Gulf Refining Company | 2,310.91 |
| W. B. Burns & Son | 112.55 |
| Sumter Railway & Mill Supply Company | 123.11 |
| Whilden & Clement | 92.35 |
| J. E. Stoudemire | 100.90 |
| Joe Richardson | 236.32 |
| City Vulcanizing Works | 90.80 |
| B. W. Richardson | 500.00 |
| Knight Bros | 63.30 |
| | $23,486.17 |

Inasmuch as it appears that the amount of the said fund is insufficient to pay the said claims in full, the Court has made no express findings as to the respective rights of the National Bank of South Carolina and the Columbia National Bank, but agrees with the conclusion of the master in reference thereto. If, upon final accounting, for any reason there should appear a surplus in the hands of the master after the payment of said claims, leave is hereby granted any party interested in the disposition thereof to apply to the Court, after due notice, for an order disposing thereof.

Upon payment in full of all of said claims by the American Surety Company, it is ordered, adjudged, and decreed that the American Surety Company be and is hereby vested

with all rights of the respective claimants so paid by it, against the bankrupt estate of Powell Paving & Contracting Company, to the extent of the amount expended by it.

It is further ordered, adjudged, and decreed that any party hereto have leave to apply to the Court at the foot of this decree for such order or orders as may be deemed necessary to carry the provisions hereof into full effect.

## ORDER OF CIRCUIT JUDGE

On motion of A. S. Harby, attorney for the City of Sumter, due notice thereof having been given all parties in interest, it is ordered and adjudged that the said City of Sumter have leave to deposit with E. C. Haynsworth, Esq., master for Sumter County, the sum of $22,836.81, the same being the amount shown by the testimony to be due by it under its contract for street paving with the Powell Paving & Contracting Company, together with such accretion of interest as the said City of Sumter may have received from said fund during the pendency of this action, said sum to be held by the master for this Court as a separate and distinct trust fund and so designated by the depository.

It is further ordered that upon such deposit being made, the said City of Sumter be and is hereby absolved, acquitted, and discharged from all liability to the said Powell Paving & Contracting Company, or any person or persons claiming under, by or through it, accruing from or arising out of the contract of street paving offered in evidence in this cause and more specifically referred to in the pleadings herein.

It is not intended by this order to affect any question of the liability of the said City of Sumter arising out of the alleged acceptance of certain partial assignments of the funds in question, and this order is without prejudice to the rights of the National Bank of South Carolina and the Columbia National Bank, and the City of Sumter, in so far as said questions are concerned.

*Messrs. Purdy & Bland,* for appellant National Bank of South Carolina, cite, *Cases distinguished:* 114 S. C., 207.

*Messrs. R. B. Herbert and Geo. L. Dial, Jr.,* for appellant American Surety Company, cite, *Obligation of surety extends only to protection of obligee, unless terms of instrument are shown to include other parties:* 27 L. R. A. (N. S.), 573; 28 S. W., 558; 65 N. E., 747; 148 Pac., 427, 429; 108 N. E., 776. *"Materials furnished:"* 18 R. C. L., 917; 118 N. C., 232; 105 S. W., 565; 111 N. C., 615; 116 A. S. R., 746; 88 N. E., 911; Ann. Cas., 1915-B, 965; Ann. Cas., 1917-A, 328; 43 L. R. A. (N. S.), 162; 70 N. E., 1095; 213 Mo., 151; 123 N. W., 1126-7; 132 N. W., 837. *Where prevented from paying over money by process of Court, not liable for interest:* 130 S. E., 580; 33 C. J., 246, Sec. 157. *Labor and materialmen have lien on money arising from job:* Sec. 5682, Code. *Liens established when contractor has any control over funds:* 72 S. C., 462; 68 S. C., 436-7. *Money paid by bank and applied to labor claims should not be subrogated to rights of laborers:* 211 U. S., 552; 29 S. Ct., 202; 53 L. Ed., 321. *Priority and rights of assignments:* 5 C. J., 935; 20 S. C. L., 587; 25 S. C. Eq., 105; 76 S. W., 156; 97 A. S. R., 746; 66 L. R. A., 760; 103 S. E., 499; 4 Rich. Eq., 105; 22 S. C., 29; 38 S. C., 147; 19 L. R. A., 831; 57 S. C., 481.

*Messrs. Thos. H. Moffatt and Jas. B. Murphy,* for other appellants, cite: *Cases distinguished:* 87 S. E., 439; 126 N. E., 405; 108 N. E., 776. *Conditions not therein specifically and clearly stated cannot be read into contract:* 148 Pac., 427; 106 S. E., 157. *Rights of sub-contractors, materialmen or labor, to maintain action on contractor's bond to owner:* 27 L. R. A. (N. S.), 573; 28 S. W., 558; 65 N. E., 747.

*Mr. A. S. Harby, for City of Sumter,* cites: *Concurrent findings of Master and Circuit Judge not disturbed unless overborne by greater weight of evidence:* 131 S. E., 18; 133 S. E., 222; Id., 834; 60 S. C., 465.

*Messrs. Harby, Nash & Hodges,* for respondent, cite: *Contract made for third party may be enforced by third party though not named therein:* 103 S. C., 55; Dudley, 332; 1 Rich. L., 268. *Same; applies to contractor's bond:* 90 S. E., 1010; 105 S. E., 270. *Same; to materialmen:* 87 N. E., 976; 27 L. R. A. (N. S.), 573; 163 Pac., 1076; L. R. A., 1917-D, 722. *Contra:* Ann. Cas., 1916-A, 39. *Overruled:* 126 N. E., 405; 12 L. R. A., 378. *Allowance of interest:* 88 S. C., 498; 131 S. E., 620; Sec. 3636, Code; Sec. 4273, Code. *Claim of surety company upon amount due by city on contract is prior claim as against assignments held by bank:* 164 U. S., 227; 41 L. Ed., 412; 208 U. S., 404; 52 L. Ed., 547; 211 U. S., 552; 53 L. Ed., 321; 68 S. C., 436; 134 S. E., 209. *Administration of bankrupt's assets:* 91 U. S., 521; 23 L. Ed., 403; 178 U. S., 524; 44 L. Ed., 1175; 184 U. S., 18; 46 L. Ed., 413; 202 U. S., 477; 50 L. Ed., 1114; 216 U. S., 528; 54 L. Ed., 382; 245 U. S., 116; 62 L. Ed., 185.

*Messrs. Melton & Belser,* for respondent, T. C. Cross, Trustee, cite: *Where surety company guarantees performance by paving company of all terms of contract, liable for materials:* 103 S. C., 55; 104 S. C., 167; 114 S. C., 207.

*Mr. Raymon Schwartz,* for various respondents, cites: *Contract for benefit of third party may be sued upon by third party though not named therein:* 103 S. C., 55; Dudley, 332; 1 Rich. L., 269. *"Materials and labor":* 144 Ky., 79; 67 Wash., 601; 120 A. S. R., 619; 102 Minn., 213; 88 N. E., 911; 189 Fed., 339; 68 Pac., 92; 82 Pac., 171; 76 N. Y., 386; 77 C. C. A., 397; 21 App. D. C., 153; 122 Pac., 337; 92 N. E., 1023.

April 21, 1927.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

We have carefully considered the questions raised by the exceptions of the different appellants in this case. We are

satisfied with the findings and conclusions. of the Circuit Court as set forth in its decree, modifying and confirming the report of the Master.

We desire to direct attention particularly to the definition of the word "surety" contained in the specifications which form a part of the contract, which definition is set out in the Master's report. That definition states that the surety "engages to be responsible for his (contractor's) payments of all debts pertaining to   *   *   * the work for which he has contracted." If any doubts remained as to surety's liability on the claims allowed in this suit, this definition should dispose of them. The liability contracted for is certainly broad enough to include all claims, allowed by the Circuit Court. Parties to a contract may, by agreement, attribute to a word used in the contract any meaning they may desire, and if such meaning is clear the Courts will give effect to it.

As was well said in *Morrison v. Wilson*, 30 Cal., 344:

"The question then comes to this, have the parties to a written contract the right to set aside the general sense of the words which they use, and for the purposes of the contract to assign to them another and different meaning by convention? That they have both the right and the power to do this there can be no question. The meaning of language depends upon usage and varies with it. If parties should insert a clause in their contract to the effect that the language used by them should be taken in a certain sense which had become provincial, or in the meaning borne by it in a particular trade, and particularly if they should proceed to state the agreed definition in detail, and the definition turned out to be clear and unambiguous, the general meaning would have to give way; and it follows that it must be considered that parties have the power to innovate upon the general meaning of the words at large free from all legal restrictions. If they see fit to agree that mile shall stand for league, or grant, bargain and sell for quitclaim, or

even black for white, however we might marvel at the caprice, we could not question the power."

Let the able and comprehensive report of the Master, E. C. Haynsworth, Esq., and the decree and order of Judge Wilson be reported.

All exceptions are overruled; the judgment of the Circuit Court is affirmed and the case remanded to that Court, with instructions that the funds in the hands of the Court be disbursed by the Master as decreed in the order of the Circuit Judge.

MR. CHIEF JUSTICE WATTS and MR. JUSTICE BLEASE and MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE concur.

MR. JUSTICE COTHRAN (dissenting) : Upon the question of the liability of the surety company, upon its bond, for the claims of materialmen, I hope that I am fair and just enough to forget the fact that my client and I were the victims of the decision of this Court in the case of *Mack Mfg. Co. v. Massachusetts Bonding Co.*, 103 S. C., 55; 87 S. E., 439. Notwithstanding this fact, I feel assured that now "far from the madding crowd's ignoble strife," in an atmosphere of clear, indifferent, judicial calm, if I may demonstrate, from the opinion itself in that case, that it was wrongly decided, the suspicion of disappointed partisanship may not affect a conviction of the righteousness of my conclusion.

Two of the main propositions advanced by the appellant, which Mr. Justice Gage in his opinion denominates "postulates," and which he declares "need not be discussed" for the reason that they "are manifestly true," were these :

"1. A stranger to a contract between two other persons cannot recover upon it, unless it appears not only that it confers a benefit upon him, but that it was made for his benefit. 2. A stranger to a contract between two other persons cannot recover upon it, unless it appears not only that it was made for his benefit, but also that there was some obligation

or duty from the promisee to him, which supplies the consideration of the contract."

These "postulates" are set forth in *ipsissimis verbis* by Mr. Justice Gage, and received the unqualified and unanimous imprimatur of the Court. They therefore need not to be buttressed by authorities, which are readily available, to the extent of every text-writer and perhaps 100 decided cases. The principle is fundamental, and springs from the elementary rule that every executory contract must be supported by a valuable consideration. Ordinarily, there is no privity of contract between the parties to the contract and the stranger; no consideration at all moving between them; but if there should be a duty or an obligation imposed, dehors the contract, upon the promisee in favor of the stranger, that supplies the element of consideration.

In the *Mack case,* there was not the faintest semblance of a duty or obligation imposed upon the city in favor of the materialmen who furnished material to the contractors. There, doubtless, may have been a moral obligation on the part of the city to pay for what material they received the benefit of, which would have supported an express contract by the city to pay for it, as this Court held in the cases of *Ferguson v. Harris,* 39 S. C., 323; 17 S. E., 782; 39 Am. St. Rep., 731, and *Bank of Spartanburg v. Mahon,* 78 S. C., 408; 59 S. E., 31, and *McMorris v. Herndon,* 2 Bailey, 56; 21 Am. Dec., 515; but how the letting of a contract to the contractor, which manifestly was intended to relieve and necessarily had the legal effect of relieving the city from any obligation for material supplied to the contractor, can be held to have created an obligation upon the city to the materialmen is more than I can conceive.

And yet, in the face of this emphatic declaration of the governing principle and of the unquestioned absence of any obligation of the city to the materialmen, the bond company was held liable upon the ground that the contractor had assumed the obligation to pay the materialmen! The argument

was that, as the contractor had agreed to furnish the material, he had impliedly agreed to pay for it; a proposition as to which there could be no question. It establishes an obligation of the contractor to the materialmen; not the necessary element of an obligation of the city to the materialmen.

The opinion in the *Mack case* declares:

"It is conceded by appellant that if the bond was taken for the benefit of the plaintiff, not incidentally but really, then the plaintiff has the right to sue and to recover upon it."

The appellant did not concede anything of the kind, as the opinion itself shows in the statement of the second "postulate," for the contention, approved by the Court, was that, conceding that the bond was given for the benefit of the materialman, the materialman had no right to recover upon it, "unless it appears not only that it was given for his benefit, but also that there was some obligation or duty from the promisee to him, which supplies the consideration of the contract."

The case at bar is equally clear that the bond was given solely for the benefit of the city, and that, if it could be conceived that it was given for the benefit of the materialmen, such benefit is non-enforceable, for the reason that the consideration that the city was under an obligation to pay the materialmen, essential to recovery by the materialmen upon the bond, is absolutely in the vocative.

But aside from this conclusive proof of the inability of the materialman to maintain an action upon the bond for the reason stated, the first "postulate," referred to in the opinion of Mr. Justice Gage, has not been complied with; that is to say, it does not appear that the bond was executed for the benefit of the materialmen.

It must be borne in mind that the contest is not one between the original and only actual parties to a written contract, the city and the bond company; it is a contest between one of these contracting parties, the bond company and

strangers to the contract, the materialmen. They seek to come under the protection of a contract entered into between two distinct contracting parties, upon the theory that the contract was entered into for their benefit, as well as for that of the other signatory to the contract, under the familiar and acknowledged rule that entitled one for whose benefit a contract is entered into between two others to maintain an action upon such contract.

Manifestly, then, the burden is upon the materialmen to show that the contract was entered into plainly for their benefit; not simply that they would be benefited by the performance of the contract, but that valuable rights were actually created by the contract for their benefit, as against one or the other of the contracting parties.

In the first place, the contract evidenced by the bond, and signed by the contractor and the bond company, upon its face provides an indemnity to the city. The city is the obligee of the bond, and it was executed in compliance with a provision in the contract between the city and the contractor, as follows:

"In order to insure the faithful performance of each and every condition, stipulation and requirement made by this contract and to indemnify and save harmless the party of the first part from any and all damages, either directly or indirectly, arising out of any failure to perform the same, the party of the second part is to execute and deliver herewith a bond in the penalty of $50,000.00, conditioned for the faithful performance of such conditions, stipulations, and requirements, with surety or sureties satisfactory to the party of the first part."

The condition of the bond, executed in accordance with the contract and contemporaneous therewith, is "that if said bound principal, Powell Paving & Contracting Company, shall in all things well and truly perform all of the terms and conditions of the foregoing contract, to be by them performed and within the time therein mentioned,

and shall pay all claims for labor performed in and about
the construction of said work, and shall have paid and dis-
charged all liabilities for injuries, etc., then this obligation
to be void, otherwise to be and remain in full force and
virtue."

The materialmen are not mentioned in the proposal, in
the specifications, in the contract, or in the bond; they are
excluded in the bond, which provides for the faithful per-
formance of the contract and for the payment of "all
lawful claims for labor performed  *  *  *  and all li-
abilities for injuries  *  *  *  in and about the said con-
struction"; a strong indication to my mind that the first
part of the condition of the bond referred solely to the ob-
ligations of the contractor to the city, and the latter an
agreed extension of the surety's obligation, limited to the
claims for labor and for damages for personal injuries.

The only even debatable ground for the contention that
the bond was intended for the benefit of the materialmen
is the provisions in the several synchronous and connected
documents, binding the contractor to furnish all labor, tools,
machinery, and material, upon the implication that he thereby
undertook to pay for them, and that that created an obliga-
tion on the part of the bond company to see that such claims
were paid. As a matter of course, when the contractor
bought material which he had agreed to furnish, there arose
an express or implied obligation on his part to pay for it;
but how his agreement to furnish, which was a matter be-
tween him and the city, includes another matter, as between
him and the materialman, to pay for it, is more than I can
understand. Test it in this way: Suppose the contractor
had actually furnished the material and laid it in place, could
the city claim a breach of his contract because he had not paid
for it? I think not. He could reasonably reply that he had
done all that he had engaged to do, and the payment was a
matter between him and the man who sold the material. We
find in each one of the documents, which have been prop-

erly held to be interrelated, nothing more than an agreement as between the contractor and the city to furnish these articles.

In the proposal, the contractor offers to "furnish all necessary machinery, equipment, tools, labor, and other means of construction and to furnish all materials specified." Does that mean that he engages, so as to make it an obligation of the bond company, to pay for traction engines, steam rollers, concrete mixers, wagons, dump carts, horses, mules, shovels, spades, and picks? If not, why discriminate and hold that he engages to pay for material?

In the specifications, the contractor engages to "furnish all the material and labor."

In the contract, "to furnish all labor, tools, machinery, and materials."

In the bond, to faithfully comply with the contract and to the present, unless, the contract contains a provision, not pay the cost of labor and damage suits. Why include labor in the engagement covered by the bond, if it could be held already covered by his contract; and, if not, why should material be held to be covered?

An innumerable array of decided cases support the proposition that the materialman cannot recover under a bond like simply that the contractor will furnish the necessary material, but that he will see that it is paid for. It is only reasonable that a bond, given for the protection of the city primarily, does not contemplate an undertaking to save the city harmless from obligations which have not been assumed by it, and on account of which no lien can be established.

As is said in *Southern Surety Co. v. U. S. Cast Iron Pipe & Foundry Co.* (C. C. A.), 13 F. (2d), 833:

"Manifestly, the city could suffer no pecuniary loss due to the failure of the contractor to pay for materials, because there was no obligation on the part of the city to pay for such materials."

The *Mack case* is not controlling upon this issue for the reason that the contract provided explicitly that the contractors were at their "own cost and expense to do all the work, furnishing all material, equipment and labor," and the bond provided for the payment of materialmen.

The only case cited by counsel for the respondent upon the subject, outside of the *Mack case,* is *Royal Indemnity Co. v. Northern Ohio Granite & Stone Co.,* 100 Ohio St., 373; 126 N. E., 405; 12 A. L. R., 378. In that case the contract provided, as it did in the *Mack case,* that the contractor should furnish the material at his own expense, and however tenuous I consider the hold upon the bond company for the claims of materialmen by reason of such a provision, the case is direct authority for the proposition above announced.

The Court says:

"If Wieland by his contract had merely engaged to 'furnish' or to 'provide' materials and labor in conformity to his contract, it could reasonably be claimed that payment to the materialmen was not comprehended within such terms."

"Where the contract and bond for municipal work merely provided that the contractor should furnish and deliver all material, perform all work and labor, etc., the guarantor on the bond was not liable to a materialman." *Staples Hildebrand Co. v. Metal Co.,* 62 Ind., 592; 112 N. E., 832.

"Under a bond for faithful performance of a contract for construction of a sewer, in which the contractor undertakes 'to furnish all labor, materials and tools necessary to execute the entire work,' the sureties are not liable to third parties for material used in performing the contract." *City of Sterling v. Wolf,* 163 Ill., 467; 45 N. E., 218.

In *Greenfield v. Parker,* 159 Ind., 571; 65 N. E., 747, the syllabus is:

"One who contracted with a township to build a school house for it gave a bond conditioned that he would provide

the labor and material at his own cost, and that the township should not be answerable therefor.  Held, that the sureties on the bond were not liable to persons who had furnished the contractor materials."

The Court said:

"There is no agreement in either the contract or the bond to pay appellant, or any other person, for material furnished or used in the construction of said schoolhouse.  Under the rule above stated it is clear that, unless the sureties agreed to be bound for debts due persons for furnishing material, there is no legal reason why they should be held liable in this ac tion.  *  *  *  The agreement on the part of the contractor to provide the material and labor and construct said school house at his own cost, and that the school township should not be answerable or accountable therefor, is not the equivalent of a promise to pay the debts contracted for such purpose."

"Where a contractor agrees with the owner to furnish all the material for a building, and gives a bond therefor, a materialman who sells the contractor such material cannot sue on the bond for the balance due therefor."  *Jones Lumber Co. v. Villegas,* 8 Tex. Civ. App., 669; 28 S. W., 558.

An exceedingly well-considered and interesting case, decided by the Supreme Court of Utah, is that of *Montgomery v. Rief,* 15 Utah, 495; 50 P., 623.  The facts of the case were practically the same as in the case at bar.  In denying the right of the materialmen to have recourse to the bond, the Court said:

"As will be observed upon examination, neither in the contract nor bond is the name of the plaintiff or of his assignor mentioned.  Nor is there any express covenant which expressly requires the contractor to pay materialmen and laborers for their material and labor before turning over the building to the trustees, and discharging his bondsmen."

After referring to the familiar doctrine upon which one claims under a contract between others, the Court said:

"To entitle a third party, who may be benefited by the performance of a contract, to sue, there must have been an intention on the part of the contracting parties to secure some direct benefit to him, or there must be some privity and some obligation or duty from the promisor [promisee?] to the third party which will enable him to enforce the contract, or some equitable claim to the benefit resulting from the promise or the performance of the contract, and there must be some legal right on the part of the third party to adopt and claim the benefit of the promise or contract. * * * Testing the case * * * by these principles, it becomes manifest that the doctrine, as to third parties, does not apply, and that the respondent cannot maintain this action. The promisors * * * [sureties] made no promise to pay for material and labor used by * * * [the contractor] * * * in the performance of his contract, and owed no duties to third parties. Nor did the * * * [obligee of the bond], as promisee, owe any legal duty to persons who might furnish material or labor to * * * [the contractor] * * * for the construction of the building, having had no contractual relation with and obtained nothing from them. Nor does it appear that any relation existed between the * * * [owner] and * * * [the contractor] * * * which could inure to the benefit of materialmen and laborers, and render the sureties liable. It is true, the contract provides that * * * [the contractor] * * * shall furnish all the material and labor necessary to complete the building, but it nowhere contains a covenant that he shall pay for all such material and labor before the building shall be turned over by him and accepted by the trustees. * . * * From an examination of all the provisions of the contract, it is manifest that those relied upon were intended merely as a protection to the * * * [owners] * * * and that the bond was neither made nor intended for the benefit of material-

men and laborers.   How, then, can it be maintained that
the respondent has a right to sue the sureties?"

I do not think the contract contained even an incidental
benefit to the materialmen, much less an express provision
for their benefit.   The test is whether or not the obligation
of the contractor, in his contract with the city, was met by
furnishing the material, regardless of whether he afterwards
failed to pay for it or not. As to this, I do not see how there
can be but one answer.   Here the contractor has furnished
everything that he was required to furnish, and has so com-
pletely complied with his contract that there is a fund of
more than $20,000 to his credit in the hands of the city.   If
the fund had not been tied up by this suit, and the contractor
had demanded it, could the city have refused payment upon
the ground that the material had not been paid for?   I do
not think so, for that was not covered by the contract and
was a matter solely between the contractor and his creditors.

Furthermore, if the contractor's obligation to furnish the
material embodied also the obligation as between him and
the city to pay for it, so as to give the materialmen practi-
cally a vested interest in the contract, the city would have
been under obligation to protect the materialmen; and if it
settled with the contractor, leaving the materialmen unpaid,
it would have been liable to the materialmen, a conclusion
which strongly suggests the *reductio ad absurdum,* in view
of the clear meaning of the contract that the contractor's
obligation would have been met by furnishing the material.

An even stronger case against the materialmen's right
of action is *Parker v. Jeffery,* 26 Or., 186; 37 P., 712.

In *German Alliance Insurance Co. v. Home Water Sup-
ply Co.,* 226 U. S., 220; 30 S. Ct., 693; 34 L. Ed., 898, the
Court said:

"Before a stranger can avail himself of the exceptional
privilege of suing for a breach of an agreement, to which
he is not a party, he must at least show that it was intended
for his direct benefit."

"The sureties on a contractor's bond cannot be held liable to persons having claims for material or labor, unless there is an express agreement in the contract or a condition in the bond requiring the contractor to pay such claims." *Snider v. Greer-Wilkinson Lumber Co.,* 51 Ind. App., 348; 96 N. E., 960.

"It is essential that the stipulation and conditions in a contractor's bond should be sufficiently precise and definite in terms to lay upon the obligees an obligation to pay or cause to be paid the debts due the beneficiaries in order to afford the latter in any event a cause of action. In order for a third party to recover upon an agreement between others to which he is not privy, the contract must be made expressly for his benefit. It must not only be intended to secure some benefit to him, but it must be a promise legally enforceable." *Wilson v. Nelson,* 54 Okl., 457; 153 P., 1179. materialmen? Certainly not upon the city, for the contractor, does the engagement of the contractor to furnish the material impose an enforceable obligation in favor of the materialmen? Certainly not upon the city, for the contractor's obligation is met when he furnishes the material; certainly not upon the contractor, for his obligation to the seller of the material was created by the sale and an express or implied promise to pay for it. The clause in the contract, upon which the third party relies to establish the essential element that it was made for his benefit, must create of itself an obligation upon one or the other of the contracting parties. It seems to me that it does not create any manner of obligation upon either. The implied obligation of the contractor to pay for what material he buys cannot inject into an engagement simply to furnish material an additional agreement that the contractor will pay for it and the city will undertake to see that that is done.

The Court in the case last cited, continuing, says:

"Does the agreement to furnish all necessary tools, labor, and material found in the first clause of the contract give

a cause of action to plaintiffs?  In the case of *Puget Sound
Brick Co. v. School District,* 12 Wash., 118; 40 P., 608,
the contract provided that the contractor should furnish the
materials.  The bond given to secure the performance of
the contract was conditioned that the contractor should
faithfully, timely and truly do and perform the said work,
and comply with said contract, plans, and specifications. The
Court, construing the contract and bond, said: 'It is true that
it is therein provided that he shall furnish the materials, and
it would be fair to presume that that meant that he should
furnish them at his own expense, but it could not be inferred
from the fact that he was required to do this and he thereby
bound himself to pay the persons from whom the materials
should be obtained.' "

In *Green Bay Lumber Company v. Independent School
District,* 121 Iowa, 663; 97 N. W., 72, the Court said:

"The sole question on this appeal is whether the bond
executed by the contractor to the school district was also
intended for the benefit of subcontractors furnishing labor
and materials.  If not so intended, the sureties are not
liable, and the demurrer was properly sustained.  It will be
observed that the contract merely required  *  *  *  [the
contractor]  *  *  *  to provide materials and perform
the labor, but contains no stipulation in relation to the pay-
ment therefor by him.  A condition for compliance there-
with imposed on the bondsman no liability to the subcon-
tractors."

In *Sterling v. Wolf,* 163 Ill., 467; 45 N. E., 218, the syl-
labus is as follows:

"In an agreement for the construction of a sewer, the
contractor undertook to 'furnish all labor, materials, and
tools necessary to execute the entire work,' and gave a bond
with sureties for the faithful performance of his contract.
Held, that the sureties were not bound to pay third parties
for materials used in performing the contract."

The Court said:

"This decision is based upon the ground that the contract between the city and  *  *  *  [the contractor]  *  *  * does not bind him to pay third parties for material used in performing the contract, and, therefore, his failure to do so constituted no breach of the obligation of his sureties.  * *  *  It is not claimed that the contract, in express terms, bound [the contractor] to pay for the materials.  He agreed to 'furnish all labor, materials, and tools necessary to execute the entire work'; but it is not pretended that, under that agreement, appellees can be compelled to pay for such labor, material, and tools."

In a number of cases, notably *United States Co. v. Gleason,* 135 Wis., 539; 116 N. W., 238; 17 L. R. A. (N. S.) 906; and *Builder's Lumber & Supply Co. v. Chicago Co.,* 167 Wis., 167; 166 N. W., 320, it is held that, where the contract between the city and the contractor contains an obligation on the part of the contractor to pay the claims of materialmen, the bond guaranteeing the performance of the contract inures to the benefit of the materialmen, which marks the distinction between those cases and the case at bar.

See an extended note on the subject in 27 L. R. A. (N. S.), at page 591; also 13 C. J., 707, citing an innumerable array of authorities.

I think, therefore, that the materialmen in this case have no claim whatever against the surety company, and that consequently the claims of the banks, under their assignments, have preference in the distribution of the fund in hand.

As to the matter of interest upon the accounts proved, which amounts to something like $4,500.00, I do not think in any event that the surety company should be charged with that, in view of the fact that the money has been tied up under an injunction procured by the plaintiff.

It will be observed that the plaintiff's cause of action is based not upon the liability of the surety company upon the

bond, but upon the plaintiff's claim to be subrogated to the rights of the surety company in the fund in Court, and if. allowed priority the plaintiff should be limited to the amount in hand.

I have not considered the points urged in the opinion of Mr. Justice Stabler that the surety company is concluded by the "definition" contained in the specifications. I have considered the liability of the surety company from what I consider the legitimate sources of that liability, and not from a definition which cannot supersede the formal documents.