**AMENDED OPINION**
**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-1117**

---

FANCZI SCREW COMPANY; CAROLINA TOOLING
CONCEPTS,

Plaintiffs - Appellees,

versus

ORIX FINANCIAL SERVICES, INCORPORATED, a/k/a
Orix Credit Alliance, Incorporated,

Defendant - Appellant.

---

**No. 04-1170**

---

FANCZI SCREW COMPANY; CAROLINA TOOLING
CONCEPTS,

Plaintiffs - Appellants,

versus

ORIX FINANCIAL SERVICES, INCORPORATED, a/k/a
Orix Credit Alliance, Incorporated,

                                        Defendant - Appellee.


Appeals from the United States District Court for the District of
South Carolina, at Greenville.  Terry L. Wooten, District Judge.
(CA-02-198-6-25)

―――――――――――――

Argued: September 29, 2004        Decided: December 13, 2004

―――――――――――――

Before MICHAEL and MOTZ, Circuit Judges, and Roger W. TITUS, United
States District Judge for the District of Maryland, sitting by
designation.

―――――――――――――

Affirmed in part, vacated in part and remanded by unpublished per
curiam opinion.

―――――――――――――

**ARGUED:** Samuel Walter Hixon, III, WILLIAMS MULLEN, P.C., Richmond,
Virginia, for Appellant/Cross Appellee.  Walter Henry Bundy, Jr.,
SMITH, BUNDY, BYBEE & BARNETT, P.C., Mount Pleasant, South
Carolina, for Appellees/Cross Appellants.  **ON BRIEF:** Patrick R.
Hanes, Edward J. Dillon, Jr., WILLIAMS MULLEN, P.C., Richmond,
Virginia; Rivers S. Stilwell, NELSON, MULLINS, RILEY & SCARBOROUGH,
L.L.P., Greenville, South Carolina, for Appellant/Cross Appellee.
Stanley E. Barnett, SMITH, BUNDY, BYBEE & BARNETT, P.C., Mount
Pleasant, South Carolina; James W. Logan, Jr., LOGAN, JOLLY &
SMITH, L.L.P., Anderson, South Carolina, for Appellees/Cross
Appellants.

―――――――――――――

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

In the first phase of a bifurcated trial, the jury found that (1) Orix Financial Services had entered into an agreement to enter into a lease with Fanczi Screw Company, Inc.; and (2) four documents memorialized that agreement. The district court then held that, although three of those four documents included forum selection, choice of law, and damages limitations provisions, these provisions did not govern the agreement to enter into the lease. In the second phase of the trial, the jury awarded Fanczi compensatory and punitive damages, finding that under South Carolina law Orix had breached the contract, breached it with a fraudulent act, and violated the South Carolina Unfair Trade Practices Act (SCUTPA). The jury also awarded Carolina Tooling Concepts damages for Orix's violation of SCUTPA. Orix appeals; it does not dispute the breach of contract finding or award of compensatory damages and costs, but contends, on various grounds, that the remaining damages and attorney's fees awards should be vacated. Fanczi and Carolina cross-appeal, asserting that the district court erred in denying their motion for treble damages under SCUTPA. For the reasons that follow, we vacate the judgment of the district court as to Fanczi's claims and remand for further

proceedings consistent with this opinion.[1]  However, we affirm the judgment of the district court as to Carolina's SCUTPA claim.

## I.

Fanczi Screw manufactures large industrial screws used in the production of plastics.  These screws are traditionally manufactured by hand using lathes, and a single screw can take two to three days to complete.  Laszlo Fanczi, Sr., who manages the company, became interested in boosting productivity by purchasing a computer-operated robotic machine, called a "whirling machine," that can produce superior screws in a fraction of the time it would take to produce them in the traditional manner.

Fanczi charged Charles Brewington, a principal of Carolina Tooling Concepts, which is a broker of machine tools, with negotiating a deal to purchase a whirling machine from Weingärtner Maschinenbau GmbH, an Austrian manufacturer.  Weingärtner proposed a sales price of $1.15 million, including a $230,000 down payment, with a delivery time of 11 months.  Carolina would receive from Weingärtner a 5% commission on the purchase price of the machine, to be paid in stages.  Brewington contacted Orix to secure financing for the sale.

---

[1]Because of our resolution of this case, we need not reach the other issues raised by Fanczi on appeal and cross-appeal.

4

In July 2000, Fanczi accepted a secured purchase and leaseback agreement, which had been proposed in a letter from Orix loan officer John Calfee (the "Calfee Letter"), and was subject to Fanczi's payment of an application fee and approval by Orix. The Calfee Letter described an arrangement in which Orix would purchase the machine and lease it to Fanczi for seven years. At the end of the term of the lease, Fanczi would have the option to purchase the machine for $1.00. The loan financing the purchase would be secured by Fanczi's assets, excluding real property.

A month later, in August 2000, Fanczi paid the application fee, and executed both a promissory note for the down payment (the "Note") and a security agreement (the "Security Agreement"); in addition, Lazslo Fanczi executed a personal guaranty (the "Guaranty"). Fanczi Screw also executed an equipment lease agreement (the "Lease Agreement"), but Orix never signed the Lease Agreement. The Note, Guaranty, Security Agreement, and Lease Agreement all included provisions choosing New York law and the County of New York as the venue for all claims arising under the contract; waiving the right to a jury trial; and disallowing consequential and punitive damages (collectively, the "Limitations Provisions"). The Calfee Letter did not include any of these limitations.

Unaware that Orix had not signed the Lease Agreement and assuming that a lease agreement had been reached, Fanczi issued a

5

purchase order to Weingärtner for the machine, and Orix paid Weingärtner the $230,000 down payment. Weingärtner then paid Carolina a commission of 5% of the downpayment on the machine.

Prior to the delivery of the machine, a representative of Fanczi contacted Orix to request that Orix provide Weingärtner with the remaining financing on the machine. Orix, having determined that Fanczi was not an acceptable credit risk, refused; Orix declared that there was no agreement to lease the whirling machine to Fanczi, but rather that what Fanczi regarded as a down payment was actually only a short-term loan.

During the time in which Fanczi attempted to secure new financing for the machine, it was delivered and installed. Ultimately, Fanczi did not succeed in acquiring financing, but negotiated an arrangement through which Weingärtner took possession of the machine and reimbursed Fanczi for the amount of the down payment and expenses. Fanczi repaid the $230,000 to Orix. Weingärtner resold the whirling machine to one of Fanczi's competitors.

II.

Fanczi and Carolina filed a complaint in state court in South Carolina, alleging that Orix had breached its agreement to enter into an equipment lease; breached that same agreement accompanied

6

by a fraudulent act;[2] and violated SCUPTA, S.C. Code Ann. § 39-5-10 et seq. (Law. Co-op. 1985). Orix removed the case to federal court, which held a bifurcated trial.

At the conclusion of the first phase of that trial, the parties agreed that the judge would submit two questions to the jury. First, the jury was asked to determine if Orix had "enter[ed] into an agreement with Fanczi Screw Company, Inc. to lease . . . a whirling machine for 7 years with an option to purchase it at the end of the term." If the jury answered this question in the affirmative, it was asked to determine which of five documents -- the Note, Security Agreement, Guaranty, Lease Agreement, and Calfee Letter -- "memorialize[d] the terms of the lease to purchase contract referenced in the Complaint."

The jury answered the first question yes, finding that Orix had an agreement with Fanczi to enter into an equipment lease. In answering the second question, the jury identified the Note, Security Agreement, Guaranty, and Calfee Letter (but not the Lease Agreement) as the documents memorializing the terms of this agreement. The district court then held that the Note, Security Agreement, and Guaranty, all of which included the Limitations

---

[2]South Carolina law provides a separate cause of action for breach of contract accompanied by a fraudulent act, allowing recovery of punitive damages. See Hardee v. Penn Mutual Life Ins. Co. of Philadelphia, 53 S.E.2d 861, 865 (S.C. 1949) (stating that a party can recover punitive damages only when a fraudulent act accompanies a breach of contract).

7

Provisions, did not govern the agreement to enter into the equipment lease itself, but applied only to the financing of the $230,000 loan to Fanczi.

The case proceeded to the second phase of the trial. At the conclusion of that phase, the jury found for Fanczi on all claims, and awarded Fanczi $1,040,352 in damages for breach of contract and for violation of SCUTPA, and $2.5 million in punitive damages for breach of contract accompanied by a fraudulent act. The jury also awarded Carolina $46,000 for violation of SCUTPA. Orix renewed its motion for judgment as a matter of law made before and during trial, and also moved for a new trial. Fanczi and Carolina moved for treble damages and attorney's fees under SCUTPA. The district court denied Orix's post-trial motions, awarded Fanczi and Carolina attorney's fees and costs under SCUTPA, and denied their motion for treble damages.

## III.

We address, first, Orix's appeal of the judgment in favor of Fanczi, and then turn to the appeal of the judgment in favor of Carolina and Carolina's cross-appeal.

## A.

The initial, and ultimately determinative, question as to Fanczi's claims is whether the district court erred in construing

8

the terms of the agreement to enter into an equipment lease. As the parties acknowledge, this determination involves an issue of law, which we consider de novo. See Williams v. Prof'l Transp., Inc., 294 F.3d 607, 613 (4th Cir. 2002).

The district court noted that the jury, in finding that the written Lease Agreement did not memorialize the agreement to enter into a lease, disavowed a document that included the key Limitations Provisions. The court regarded this fact as critical, inferring from this disavowal an intention by the jury not to apply the Limitations Provisions to the agreement to enter into an equipment lease. The court determined that the Note, Security Agreement, and Guaranty, which included the Limitations Provisions, contemplated neither an equipment lease to Fanczi nor a default by Orix. According to the district court, their effect was limited to the initial $230,000 loan to Fanczi. Thus, the district court concluded that only the Calfee Letter, which did not designate a New York forum or New York law or limit damages, envisioned and affected the agreement to enter into an equipment lease. That interpretation, although certainly plausible, fails in light of the jury's answer to the second question and the explicit language in the Security Agreement.

In response to the second question, the jury found that four documents -- the Note, Guaranty, Security Agreement, and Calfee Letter -- memorialized the terms of the agreement to enter into an

equipment lease.[3]   The jury's finding that all four of these documents memorialized the agreement requires that all four documents be construed <u>together</u> as a single contract.   See <u>Café Assocs., Ltd. v. Gerngross</u>, 406 S.E.2d 162, 164 (S.C. 1991) (holding that contracts executed by the same parties for the same purpose and during the course of the same transaction should be read together); <u>Ellie, Inc. v. Miccichi</u>, 594 S.E.2d 485, 492 (S.C. Ct. App. 2004) ("In South Carolina, two contracts executed at different times relating to the same subject matter, entered into by the same parties, are to be construed as one contract and considered as a whole.").

---

[3]A review of the record reveals that at trial Fanczi contended that Orix and Fanczi had an agreement to enter into an equipment lease (not an agreement to lease) memorialized by the Calfee letter.   Orix, on the other hand, argued that there was no agreement, at all, or that, if there was, it was an agreement memorialized not only by the Calfee Letter, but also by the Note, Security Agreement, Guaranty, and Lease Agreement, and limited by the Limitations Provisions included in the last four of those documents. At oral argument, counsel for Fanczi suggested that the jury's acceptance of its contention that there was an agreement to enter into an equipment lease meant that the jury also accepted its view that nothing but the Calfee Letter constituted the terms of that agreement.   However, the jury not only found that Orix and Fanczi had an agreement to enter into an equipment lease, but also identified the documents memorializing that agreement: <u>i.e.</u>, the Note, Security Agreement, Guaranty, and Calfee Letter.   That answer rendered irrelevant the question of whether the agreement between the two parties constituted an agreement to enter into an equipment lease or a lease agreement.   Whatever the subject of the agreement, the jury found it "memorialized" by four documents and all four of those documents must be construed to determine the rights of the parties.

One of the documents memorializing the agreement to enter into a lease that contained the Limitations Provisions--the Security Agreement--broadly defined the "mortgage obligations" to which it applied as including "all obligations and/or indebtedness of any and every kind arising out of . . . equipment lease agreements . . . ." Of course, as Fanczi notes, an equipment lease agreement does not constitute a traditional mortgage obligation. However, "[p]arties to a contract may, by agreement, attribute to a word used in the contract any meaning they may desire, and if such meaning is clear the courts will give effect to it." See, e.g., Standard Oil Co. of New Jersey v. Powell Paving & Contracting Co., 138 S.E. 184, 193 (S.C. 1927). That is what the parties have done here. By adopting this definition of mortgage obligation, the parties have provided that the Security Agreement, complete with its Limitations Provisions, applies to any agreement to enter into an equipment lease. Accordingly, the Limitations Provisions, mandating venue in the County of New York, choosing New York state law, and prohibiting consequential and punitive damages, govern the parties' agreement to enter into the equipment lease for the whirling machine.

This holding requires us to conclude that the agreement (by its Limitations Provisions) prohibited the causes of action under South Carolina law--breach of contract accompanied by a fraudulent

11

act and violation of SCUTPA--and also prohibited the award of any damages other than actual damages.

### B.

Carolina, however, was not a party to the agreement, and is therefore not affected by its Limitations Provisions. Orix asserts that there was insufficient evidence to support the jury's finding that it violated SCUTPA. Carolina cross-appeals the district court's denial of its motion for treble damages.

We have reviewed the record, briefs and applicable case law, and we have heard oral argument on these issues. The district court did not err in its resolution of these issues. See Fanczi Screw Co. v. Orix Fin. Servs., Civil Action No. 6:02-0198-25 (D.S.C. Dec. 23, 2003). However, in light of our resolution of Fanczi's SCUTPA claim, on remand the district court should revisit its award of attorney's fees and costs under SCUTPA.

### IV.

For the reasons set forth above, we affirm in part and vacate in part the judgment of the district court and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART AND REMANDED